Good morning. May it please the court. My name is Nick Mode and I'm counsel for the appellant, Megan Moore, in this case. I apologize my voice is a little raspy. I'm biting off a little bit of a cold. As the court's aware, the only issue to be decided in this case is whether or not the district court erred in dismissing the plaintiff's complaint on the basis that it was preempted by ERISA. The facts of the case are pretty straightforward. The plaintiff's late husband, John Michael Moore, was employed by the defendant. He filled out an enrollment form for life insurance, basic and supplemental life insurance, elected five times his salary, and that enrollment form was never forwarded to the life insurance company. In fact, the first that Guardian ever heard of Mr. Moore was whenever he passed away and the plaintiff made a claim for life insurance coverage. So it's undisputed that there was no coverage ever actually in place for Mr. Moore's benefit. There's a lot of case law out there with respect to improper processing of claims, but there's very little with respect to an employer failing to forward an enrollment form for a planned participant at all. The closest there is that this circuit has had the opportunity to address a set forth in a Wilson v. Zoner case. The facts of that case are a little bit different than we have here in that the defendant in Zoner was an insurance agent, an agent for the life insurance plan itself. He submitted an application for the supplemental life insurance for a five-time salary. This court found based on a seven-factor analysis that set forth in the briefs that the state law cause of action were not preempted by ERISA. Were there any planned administrator's acts in the Zoner case? The defendant was an agent for the plan, but I do not believe he was the planned administrator. Here the defendant is the planned administrator, but I think it's significant that there was never actually any coverage in place. Counsel, you said that before and I didn't challenge you. I thought that all full-time employees were covered for the basic, right? Correct. That was the policy. But like I said, Guardian had never even heard of Mr. Moore until after the fact and arguably with no obligation to do so. Counsel, I bet they took tax deductions. I bet they did for the things not to get into other parts of ERISA. In fairness, I bet they had to do the basic. Don't you think so? Probably so. Well, and you say, I think your brief says Guardian gratuitously, if you will, paid the basic, and opposing counsel didn't respond, but I'll bet it wasn't viewed as gratuitous. I'll bet it was viewed as part of the contractual obligation to pay basic benefits to every employee. I may be mistaken. I think the word gratuitous was in the defendant's brief. Voluntarily, I think, was the word. That may be the case. It wasn't voluntary, was it? After their review, I assume that Guardian probably thought that they did have an obligation to pay. I mean, I haven't gone through and determined whether the argument is for and against that. Non-discrimination, there are several provisions in the tax law. Go ahead. Right. But like I said, there's very little case law out there where the employer fails to forward the actual enrollment form. The Bertone case that is cited in the brief addresses this specific scenario, and they do it kind of on three-fold logic. They apply two different tests from other circuits, and they also decided that the plaintiff was not a participant or a beneficiary because they were never enrolled in any coverage. But they draw a distinguishment based on Well, a widow of an employee is obviously a beneficiary under this plan. Well, had there been any coverage in place There was basic coverage. So, this is, like I said, this is kind of a You're not suing for $310,000, you're suing for $160,000. Well, the That's why this is a suit for planned benefits. And we don't need to get into the multi-factor test, I don't think. Well, a lot of the cases cited in the briefs find that just because the calculation of planned benefits is, or the difference in planned benefits is the basis for your damages calculation, that's too ancillary in and of itself to constitute relating or referencing Give me the Supreme Court Eighth Circuit case you're thinking of there. I believe it's This is remedy preemption I'm talking about. Off the top of my head, I'm not I don't remember exactly what case it is. I'll try to look over it and bring it up on rebuttal. But if you look at the logic set forth in the Bertone case, they say that the judgment against the defendant would simply result in a judgment against her former husband's employer. The district court in that case, they had already filed in state court. It was, they removed it to the district court, found that there was no coverage, and it was remanded back to the state court. She refiled state law claims. So they found that there was no ERISA coverage under almost exact Who's the Eighth Circuit case at? No, it's the Bertone case prior to the state law claim being filed. It's a Florida Court of Appeals case. Florida State Court. Yes, sir. A lower state court. I believe they went up to the district court, federal district court, and they found that there were no benefits. They removed them first and then found that there was no ERISA coverage, kicked them out, and they filed their state law causes of action. It's kind of an interesting procedural history. But based on the logic set forth in the Bertone case, I think there's a distinction to be drawn. Essentially, the employer here played the same role as the insurance agent in the Wilson case. Are they the plan administrator in this case? The employer? Yes. The defendant is the plan administrator in this case. Thank you. That's basically the only difference between Wilson and the facts that we've got here. But factually, the defendant played the exact same role as the insurance agent would have. Their job would have been to forward the enrollment form to enroll the plaintiff's late husband in the life insurance program, and they failed to do so. The plaintiff arguably may not have a remedy under ERISA. If she were required to go forward under ERISA, her claim is likely under the breach of fiduciary duty section of the statute, and I don't believe this would make equitable remedies available to her. I'm not sure that's clear. Well, I think the statute provides appropriate, equitable relief. No, I'm not so sure that she's limited to A3 as opposed to A1 relief. It's a suit for benefits to which the deceased did everything required to prevail. Well, we have alleged that in our amended complaint after being dismissed. But I think there are lots of questions as to whether or not everything was done. There may or may not have been some other steps they would have had to go through to get the supplemental life insurance. What's your claim under State law? Why is that any more crystal clear and slam dunk? Well, I think the negligence is pretty straightforward. The promissory estoppel claim, she was represented to have that coverage in place, and little did she know, there was no coverage in place at all. Whereas proceeding under A1, I think there may be some questions as to whether she did everything that was required to get the supplemental life insurance. Can you explain that? Well, I believe there's some additional proofs of coverage and whatnot that she would have been required to submit for the additional, or he would have been required to submit for the additional life insurance coverage in excess of just the basic. So she may have, the claim under A1 may be pretty questionable, and going to the breach of fiduciary duty claim, I don't think this court has yet addressed whether or not she would be able to get made whole damages, be in equitable relief. She may just be entitled to restitutionary damages if she's preempted, and likely leaving her without a remedy. If there's no further questions, I'll reserve the rest of my time. Thank you. May it please the Court, Brandon Cate for Apple Central LLC. Your Honors, we submit that the District Court got it right on the preemption question. This Court should affirm in this interlocutory appeal, and this Court reviews de novo. I agree that we don't get into the multi-factor test under an express preemption question because this is a complete preemption case, as the District Court found in finding that Federal jurisdiction existed after removal. I agree with your briefs laying out, when it's expressly preempted, it's completely preempted. I'm sorry, Judge? When it's expressly, express preemption results in complete preemption in the sense that there is no State law cause of action. That's correct. All right. So the difference between having to look at some sort of less direct impact on plan administration versus simply suing for plan benefits under State law, I understand that. Yes, sir. I think your distinction, but your distinction you weave out between a complete and express is foreign to me. Okay. I don't think the Supreme Court has ever done it that way. I apologize, Judge. No, no. I'll go back and look at that. Well, I think the distinction, I mean, the question of when you have to get into a multi-factor test because the word related to can, as Justice Scalia says, everything's related to everything. You don't have to do that if someone comes in and files a State law cause of action for plan benefits. That's how we see the case. We see this as a cause of action for plan benefits. But even if I'm wrong on that, I still think we get the preemption question is answered in the affirmative because this is also an A3 case under the breach of fiduciary duty claim that this Court recognized in 2014 in the Silva case. Plaintiff's complaint alleges that Apple Central was acting as a fiduciary when it withheld the premiums from the paycheck but allegedly failed to turn those premiums over to Guardian, the claims administrator and insurance company. On the basis of those factual allegations, plaintiff makes a State law claim for breach of fiduciary duty. I think that is identical to a claim under 1132A3. There are three potential claims that a plaintiff can make under the civil enforcement scheme that would give us complete preemption. First is the A1 claim just for benefits. There's a second claim under A1 for interpretation of plan rights. And the third is the breach of fiduciary duty claim that this Court's 2014 decision in Silva v. MetLife analyzed in view of the Supreme Court's recent decision in Cigna Corporation v. Amera. This Court explained that the statute provides three possible equitable theories of recovery under 1132A3 that an ERISA administrator's breach of fiduciary duty could result in, those being surcharge, reformation, and estoppel. To me, this is a textbook surcharge case. Plaintiff says that she's not sure that she has a remedy under 1132A3. Under the analysis in Silva, she would have a potential claim for surcharge, which would potentially make her whole if she can prove her factual allegations. Is that a surcharge to the plan or an individual liability of the administrator? Well, it depends on who would be wrong, but the plan administrator is the defendant here. And I don't know, it would depend on the relationship between the plan administrator and the claims administrator and the insurance policy, something that we haven't gotten into yet in the district court. Well, you just hurt your position with me. Okay. If it isn't clear that the liability would be personal on this set of facts to the employer, then ERISA preemption troubles me as a bad result, therefore bad policy, therefore questionable interpretation of the statute. Well, I think it would be liability. I mean, the defendant is the plan administrator in the case. I think that's who this court would find responsible in a judgment. The Silva case that I mentioned has very similar facts to our facts here. And I know plaintiff relies on the Florida State Court case for similar facts, but I think we need to look at the Silva decision where we had a situation with an employee died, the employee's father applied to receive his son's life insurance benefits that were part of an ERISA employment plan. The insurer was also a defendant in that case, as they were the one who provided benefits, and the insurer denied the claim, asserting that the correct paperwork had not been turned in, even though the employer had been withholding premiums from the paychecks and sending those to the insurance company. So the plaintiff there, the father, sued both the employer, who as here was the plan administrator, and the insurance company. The district court denied relief. The district court found the plaintiff could not make a claim for benefits under 1132A1 because the deceased was not properly enrolled in the coverage. This court reversed, holding that an ERISA claim for equitable relief under 1132A3 certainly existed. The focus, the court said the focus should be on the equitable remedies that exist under 1132A3. Those include surcharge, reformation, and estoppel. This court relied on the Ameri Supreme Court decision that said equity courts possess the power to provide the relief in the form of monetary compensation for a loss resulting from a trustee's breach of duty or to prevent the trustee's unjust enrichment. Counsel, does that prove too much? Because that sounds like a right to payment at the time you were done describing it, and that right is in A1. I think either, whether we view it as A1 or A3, I think we get preemption. I think the plaintiff could pursue both theories as they have done in the second amended complaint. I think that, but whether it's viewed as an A1 claim for benefits under an A3 equitable surcharge remedy, the result is the same. There's preemption of the state law claims. In Silva, this court said that to obtain relief under the surcharge theory, a plan participant is required to show harm resulting from the plan administrator's breach of fiduciary duty. The court said because Silva had pleaded facts that if proven true could show a risk of violation resulting in harm, and because that breach has a remedy under the equitable theory of surcharge, this court reversed to the district court for further proceedings. That opinion went ahead and analyzed other potential theories that exist under 1132A3, a potential reformation claim of the policy, and a potential estoppel claim. And I think plaintiff has all those arguments here. And so whenever ERISA provides, the civil enforcement scheme provides a cause of action that is supplemental. So the ERISA amended complaint has been filed? Yes, sir, it has, Judge. Did you concede it relates back? Yes, sir, we do. The plaintiff, in arguing earlier today, they said that the motion to dismiss was granted. The motion to dismiss was not granted. The district court held the motion to dismiss in abeyance and allowed plaintiff to file a second amended complaint, which plaintiff did so before the district court made a decision on whether to allow plaintiff to pursue an interlocutory appeal. So we have a second amended complaint on file that makes these ERISA claims. So I just don't understand the argument that plaintiff doesn't feel like she has a remedy, because I think it's set forth that if she can prove her facts, this is a Silva case. And it's been pleaded as such in the second amended complaint. The plaintiff also said this morning that it's undisputed that she was not enrolled in the supplemental life insurance policy. You know, the district court didn't go down this path of whether or not plaintiff had actually received some supplemental insurance benefits. There's no question that the plaintiff received the basic life insurance coverage. There was a payment of $93,000, which was 150% of the deceased's income, his salary. But there was also in the joint appendix at JA 290 through 293, there's an identification of what's being paid. It identifies the basic life insurance payments. Well, we're not into that. No, I understand. So now tell me in practical terms how a recovery under state law and a promissory estoppel theory would terribly disrupt this plan administration. Well, I think Against the employer personally for its conduct as employer. I think that because under the state law claims, including the promissory estoppel claims, there are requests for punitive damages. Okay, so what? Well, I think As long as the plan resources are not at risk, why does ERISA care? Well, ERISA does care because this court many times has said we want a uniform system of obligations, responsibilities for fiduciaries. The employer here is an ERISA fiduciary under the statute, not only because it's the employer, but because it's actually the plan administrator. So I think we run afoul of ERISA when there are different standards of conduct being applied to a plan administrator. I think Well, forget that. But now you're talking different standards of conduct. I thought the previous breath was, oh, my gosh, it's punitive damages. It's not different standards of conduct, really. The facts are pretty clear here, I guess. I mean, they may not be clear as to what you were talking about, whether Mr. Moore did everything properly to really be entitled to the $160,000. But the failure to register him is clear. And then the acceptance through withholding of his premiums not transmitted to the insurer is clear. If the employer is liable for the benefits that his beneficiary should have been entitled to, why does ERISA care? I think ERISA cares because it wants a uniform application of the law. What's un-uniform? The district court under state law can define the conduct to which the employer is alleged to have violated by its responsibilities under the plan. Oh, I'm sorry. No, I'm just, of course, this is not unusual under ERISA, but these questions. You're right. They're not unusual. In state court, this would go to the jury. It's a, the plaintiff has requested a jury trial. Wait a minute. There's no jury trial under ERISA? My understanding of ERISA is that the application of the, the use of a jury would be limited if this is viewed as an A-1 claim for benefits. Are you talking about the abuse of discretion standard review? Do you want that, too? Well, it depends on how it's viewed. If it's truly a fiduciary, a breach of fiduciary duty claim, I think that potentially would go to the jury. But if it's an A-1 claim for benefits, I think that we'd have to look at the Firestone factors and whether there's discretion. Well, wait a minute. Yeah, but there was no, there was no, there was no claims administrator exercising discretion here. There was a claim made to Guardian. Guardian went through the process as a designated claims fiduciary. The Firestone has nothing to do with whether, with whether a, that somehow an A-1 claim against the employer for depriving the beneficiary of benefits by its own failure to, to conform to the plan requirements. That's not a Firestone question. Okay. That's a jury question. I've got to go back again because I've been puzzling this since you made this statement about punitive damages. I mean, is there really a universe in which the negligent failure to obtain insurance coverage would provide punitive damages as a breach of a fiduciary duty under Arkansas law? I mean, that would, that would shock me beyond words, right? Because, you know, the breach of a fiduciary duty can give rise to punitive damages, but it's sort of, it just would be unfathomable to me that there's actually a State that says that a mere negligent act can give rise to punitive damages. Is there such a provision in Arkansas law? It would surprise me if this rose to the level of a punitive damages case, but as long as the claim is being made, it concerns me that it is part of the State law case. It's part of the State law claims. My time is about up. Unless the Court has any additional questions, I appreciate the Court's time today. Thank you. Thank you. All right. Judge Loken, I did find in the brief the case I was referring to. It was out of standing for the proposition that the difference in policy limits as a measure of damages is not in and of itself relating to an ERISA case. It's on page 29 of the appellant's brief, Gulf Coast Plastic Surgery from the Eastern District of Louisiana, and it pretty much gives that same quote. difference in policy limits as a measure of damages is unrelated to their actual right to benefits under the plan. And because recovery against Pretty thin read. Okay, go ahead. And that's citing a Fifth Circuit case as well. But I think what's important here is even if the employer did fail to submit the enrollment form, that there may not be any recovery against Guardian at the end of the day. If they come back and say You didn't sue Guardian. I know you've added them to the amended complaint, and I'm not surprised. It's out of caution. But if you get your way, Guardian's not a defendant. You have state law claims against the employer. Well, yes, sir. I'm saying if we proceed under ERISA, there may not be any I just articulated probably what you're thinking of is for an A-1 claim against the employer. Yes, sir. For actions not failed to take as planned administrator that would have made him eligible for benefits. I don't know if that's an A-1 claim, but you don't need Guardian as a co-defendant to pursue that. And that's the point. I don't know that this set of facts affects relations between the ERISA entities. This is just as in the Bertarney case. It's a judgment against our former husband's employer in that capacity. Okay. And then with respect to the Silva case as to the exact remedies available under the A-3 claim, I think in the very last paragraph the court said that it may provide certain remedies. I don't think it's necessarily clear exactly what measure of damages would be available under an equitable claim for relief. If the court has no more questions, I will yield the remainder of my time. Thank you. Thank you, counsel. Thank you, Judge. I don't think I've ever found an easy ERISA case in almost 30 years. We'll take this one under advisement. Thank you.